U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2019 AUG 28 PM 2: 01

CLERK

BY_____lhw_____
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

ALBERT VON WEINGARTEN and )
MARY VON WEINGARTEN, )
)
Plaintiffs, )
)
v. ) Case No. 2:17-cv-00211
)
LONNIE CHESTER, )
)
Defendant. )

**OPINION AND ORDER DENYING AS MOOT DEFENDANT'S MOTION TO DISMISS AND MOTION TO STRIKE THE AMENDED COMPLAINT; CONDITIONALLY GRANTING PLAINTIFFS' MOTION TO AMEND; DENYING AS MOOT PLAINTIFFS' MOTION TO STRIKE THE STATEMENT OF UNDISPUTED FACTS; AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**
(Docs. 26, 28, 31, 36, 37)

Plaintiffs Albert and Mary Von Weingarten (collectively, "Plaintiffs") bring this action against Defendant Lonnie Chester, the administrator of the Estate of Philomena Weingarten (the "Estate"), asserting claims for malicious prosecution, abuse of process, and maladministration of the Estate.

Harold B. Stevens, III, Esq. represents Plaintiffs. Thomas E. McCormick, Esq. and Duncan F. Kilmartin, Esq. represent Defendant.

I. **Procedural Background.**

On March 1, 2019, Defendant filed a motion to dismiss for failure to state a claim, or in the alternative a motion for a more definite statement and attached a statement of undisputed facts and exhibits. (Doc. 26.) On the same day, he filed a motion to strike Plaintiffs' Amended Complaint on the basis that it differed from the one previously approved by the court. (Doc. 28.) In response, on March 13, 2019, Plaintiffs filed a second motion to amend their Amended Complaint and a motion to strike Defendant's

statement of undisputed facts and attached exhibits asserting this information is irrelevant in the instant case. (Docs. 36 & 37.) Defendant opposed Plaintiffs' motion to strike as well as their second motion to amend.

On March 11, 2019, Defendant filed a motion for summary judgment. (Doc. 31.) On April 5, 2019, Plaintiffs opposed Defendant's motion for summary judgment. Defendant replied on April 26, 2019, at which time the court took the pending motions under advisement.

Because Defendant's motion to dismiss is subsumed by his motion for summary judgment, the court DENIES AS MOOT Defendant's motion to dismiss and motion to strike the Amended Complaint. The court further DENIES AS MOOT Plaintiffs' motion to strike Defendant's statement of undisputed facts because the case has been fully briefed on summary judgment and because the parties have been afforded the opportunity to "present all material that is pertinent to the motion." Fed. R. Civ. P. 12(d). The court hereby CONDITIONALLY GRANTS Plaintiffs' motion to amend their Amended Complaint so that it may consider the parties' arguments in the context of the Second Amended Complaint.

## II.  The Undisputed Facts.

Philomena Mamie Weingarten died on December 20, 2001, at the age of 98. At the time of her death she lived in Newport, Vermont. Philomena Weingarten had six children: Anthony, Henry Jr., Robert, Albert, Juliet, and Freida. Frieda is now deceased and was survived by her daughter Leann and her son, Defendant Lonnie Chester.

Following Philomena Weingarten's death intestate, Defendant was appointed administrator of her Estate. On September 1, 2005, the Vermont probate court issued a Decision and Order (the "9/1/05 Decision and Order") wherein it granted Defendant's motion to compel Plaintiff Albert Von Weingarten to disclose and turn over the Estate's assets, and denied Plaintiff Albert Von Weingarten's cross motion to remove Defendant as Administrator concluding, "[i]t is evident from the record, and the court so finds, that the delays in settling this estate have been solely the result of Albert [Von Weingarten's] own actions." (Doc. 29-24 at 10.)

2

On October 28, 2005, in his capacity as Administrator, Defendant filed suit against Plaintiffs in the Vermont Superior Court (the "Civil Suit") alleging the following claims: larceny; conversion; embezzlement; fraud, false pretenses, trickery, or deceit; secreting assets; guardians and guardianship de son tort; attorneys in fact and attorneys de son tort; executors/administrators de son tort; fraud and undue influence; deprivation of appropriate health care; false imprisonment; trespass; outrageous conduct; unlawful mischief; and enforcement, judgment, and execution of the probate court's 9/1/05 Decision and Order.

On December 5, 2005, Defendant obtained the probate court's approval for an ex parte writ of attachment on Plaintiffs' residence based on the probate court's factual findings that Plaintiffs "are extremely deceptive persons who have obtained between $180,000 and $250,000 of Philomena Weingarten's assets without cause or right[,]" had "listed for sale their only Vermont property[,]" and that "there [was] an immediate danger that the [Plaintiffs] w[ould] sell or convey their property to a bona fide purchaser leaving insufficient attachable property or other assets to satisfy this judgment and protect the estate of the late Philomena Weingarten[.]" (Doc. 29-26 at 15-16.)

On October 29, 2009, Plaintiffs moved for summary judgment in the Civil Suit. The Vermont Superior Court denied their motion for summary judgment with regard to Defendant's claims for conversion, guardianship de son tort, attorneys in fact de son tort, constructive fraud, false imprisonment, and trespass, but granted their motion for summary judgment with regard to Defendant's remaining claims.

On November 4, 2011, the parties reached a settlement in the Civil Suit pursuant to which they agreed: "Case is settled. [Plaintiffs] shall pay $50,000 to the Estate of Philomena Weingarten. There is no admission of fault—none whatsoever – All estate proceedings, claims whatsoever are terminated with prejudice. This suit will be dismissed with prejudice. Full Confidentiality only to the extent possible due to Court procedure." (Doc. 43-2 at 16.) The parties subsequently reported to the Vermont Superior Court that they disagreed over the scope of the settlement agreement's release.

On February 21, 2012, Defendant filed a motion to enforce the settlement agreement. On April 18, 2012, Plaintiffs moved to set it aside. At an August 15, 2012 hearing held before the Vermont Superior Court, Defendant agreed with Plaintiffs that the settlement agreement did not address the rights of distribution, if any, which Plaintiff Albert Von Weingarten may have as an heir to the Estate. Based on this concession, on August 17, 2012, the Vermont Superior Court issued the following Entry Order:

> This matter came before the court on various motions related to the settlement agreement purportedly reached by the parties. The [Defendant] has conceded on the record that the settlement does not reach rights of distribution which Albert Weingarten may have under the intestate estate of Philomena Weingarten; that is, he has not relinquished his rights as an heir.
>
> In light of that concession, the court concludes that there are no further matters in dispute and the case is deemed resolved. The settlement agreement is otherwise enforceable. Payment expected under the agreement shall be made by September 3, 2012. All other claims, including various claims for sanction, are denied. This matter will be dismissed upon payment to the estate of the sums required by the agreement. Interest thereafter at statutory rate.

(Doc. 29-50 at 1.)

Plaintiffs appealed the August 17, 2012 Entry Order to the Vermont Supreme Court, asserting that there was no meeting of the minds with regard to the settlement agreement. The Vermont Supreme Court denied their appeal and affirmed the Entry Order. *See Chester v. Weingarten*, 2013 WL 9055957, at *3 (Vt. Oct. 11, 2013) ("We accordingly affirm the trial court's order enforcing the settlement agreement.").

On October 18, 2016, Defendant filed a Complaint and motion for Foreclosure of a Perfected Writ of Attachment and Judgment Lien against Plaintiff Albert Von Weingarten which Plaintiff Albert Von Weingarten opposed. The Vermont Superior Court granted Defendant's motion on July 18, 2017, however, funds from the foreclosure have not yet been tendered to Defendant. The Estate has not yet been probated and, to date, Plaintiff Albert Von Weingarten has not fully complied with the probate court's 9/1/05 Decision and Order compelling him to disclose and turn over the Estate's assets.

## III. Whether Plaintiffs' Statement of Disputed Facts May Be Considered.

The Federal Rules of Civil Procedure provide as follows:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). Under the court's Local Rules, "[a] party opposing summary judgment or a motion under Fed. R. Civ. P. 12(b)(6) or 12(c) that has been converted to a summary judgment motion must provide a separate, concise statement of disputed material facts." L.R. 56(b).

> When a party has moved for summary judgment . . . [and] has, in accordance with local court rules, served a concise statement of the material facts as to which it contends there exist no genuine issues to be tried, those facts will be deemed admitted unless properly controverted by the nonmoving party.

*Glazer v. Formica Corp.*, 964 F.2d 149, 154 (2d Cir. 1992).

Plaintiffs provided a statement of disputed facts in support of their opposition to Defendant's motion for summary judgment in which they rely upon affidavits from Kathleen Judkins and Plaintiff Albert Von Weingarten. Although their statement of disputed facts fails to include record references for each disputed fact as required by Fed. R. Civ. 56(c)(1), where relevant, the court has considered Plaintiffs' citations and exhibits. The court, however, will not search Plaintiffs' briefs for any additional disputed facts. *See Monahan v. N.Y.C. Dep't of Corrs.*, 214 F.3d 275, 291 (2d Cir. 2000) (holding summary judgment was properly granted where party's "counter-statement was . . . utterly bereft of record citations" and noting that the court "is not required to consider what the parties fail to point out") (internal quotation marks omitted); *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001) (observing that "a court is not required to scour the record in search of evidence to defeat a motion for summary judgment") (internal quotation marks omitted); *Skotak v. Tennaco Resins, Inc.*, 953 F.2d 909, 915-16 (5th Cir.

5

1992), *cert denied*, 506 U.S. 832 (1992) ("Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment[.]"); *MacLeod v. Town of Brattleboro*, 2012 WL 1928656, at *1 (D. Vt. May 25, 2012), *aff'd*, 548 F. App'x 6 (2d Cir. 2013) ("[T]he court does not consider [p]laintiff's challenges to facts that are not supported by references to the evidentiary record.").

## IV. The Disputed Facts.

Defendant contends that the Civil Suit has not yet terminated because Plaintiffs have failed to pay the $50,000 that they owe under the settlement agreement and therefore the Vermont Superior Court has yet to dismiss the Civil Suit with prejudice. Plaintiffs assert that the judgment in the Civil Suit was declared to be final by the Vermont Supreme Court and further contend that the settlement agreement constituted a favorable termination for them because Defendant was seeking a judgment in excess of $374,000. Plaintiffs also assert that they complied with the settlement agreement by mailing two checks, one for $89,500 and the other for $500, to the Vermont Superior Court, requesting that the checks be held in escrow pending a ruling on their second motion to remove Defendant as the Administrator of the Estate.

Plaintiffs assert that Defendant did not have "probable cause" to bring the Civil Suit because there was no evidence that Plaintiffs wrongly took possession of any of Philomena Weingarten's assets. Defendant disputes this assertion, noting that the probate court approved his request for an ex parte writ of attachment in the amount of $250,000 against Plaintiffs' residence.

With regard to the ex parte writ of attachment, Plaintiffs contend the amount of $250,000 was excessive because there was a $50,000 settlement agreement to "satisfy [Defendant's] claim of the wrongful taking[.]" (Doc. 47-1 at 4, ¶ 3.) Plaintiffs challenge the probate court's findings that they owed the Estate a debt and that they would sell their residence if notified in advance of the attachment. They further point out that the probate court erred in finding them malefactors because "they took care of Philomena for three and a half years, providing for her care, with room and board at no cost to the Estate, yet

6

they have been maliciously sued to collect a debt which they did not owe." (Doc. 43-1 at 5, ¶ 35.) They point out several ways in which Defendant has failed to perform his duties as the Estate's Administrator including "never filing a sworn inventory of the Estate and by pursuing the groundless underlying action against [Plaintiffs]." *Id.* at 5, ¶ 38. Defendant counters that the probate court's 9/1/05 Decision and Order compelled Plaintiff Albert Von Weingarten to disclose and turn over any and all Estate assets, estimating the value of those assets at between $180,000 and $250,000, and that the probate court effectively determined that the ex parte attachment was not excessive when it was issued.

The court concludes that the foregoing disputed facts do not preclude summary judgment because they are either not material or are more properly characterized as legal arguments or arguments regarding the proper interpretation of the facts. *See Bordelon v. Chicago Sch. Reform Bd. of Trs.*, 233 F.3d 524, 528 (7th Cir. 2000) (ruling that the burden of opposing summary judgment is "not satisfied by citations to the record that support legal argument rather than controvert material facts"); *see also Rodriguez v. Vill. Green Realty, Inc.*, 788 F.3d 31, 39 (2d Cir. 2015) ("A fact is 'material' . . . if it 'might affect the outcome of the suit under the governing law.'") (quoting *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986)).

## V. Conclusions of Law and Analysis.

### A. Summary Judgment Standard.

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court "constru[es] the evidence in the light most favorable to the nonmoving party and draw[s] all reasonable inferences in his favor." *McElwee v. Cty. of Orange*, 700 F.3d 635, 640 (2d Cir. 2012).

The moving party always "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material

7

fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). When the moving party has carried its burden, its opponent must produce "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 249. "The moving party is entitled to a judgment as a matter of law [if] the nonmoving party [fails] to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex*, 477 U.S. at 323 (internal quotation marks omitted).

"A dispute of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Rodriguez*, 788 F.3d at 39-40 (quoting *Anderson*, 477 U.S. at 248). "The function of the district court in considering the motion for summary judgment is not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists." *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Proctor v. LeClaire*, 846 F.3d 597, 608 (2d Cir. 2017) (internal quotation marks omitted).

Summary judgment is not a "disfavored procedural shortcut, but rather an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action." *Celotex*, 477 U.S. at 327. Defendant seeks summary judgment on all claims set forth in the Second Amended Complaint, arguing that Plaintiffs have failed to proffer admissible evidence to establish each essential element of their claims for: (1) malicious prosecution; (2) abuse of process; and (3) maladministration of the Estate.[1]

---

[1] Defendant also responds to what he perceives as Plaintiffs' claims for defamation. The Second Amended Complaint, however, contains no reference to "defamation." In any event, "Vermont law recognizes a litigation privilege that extends to statements within documents filed in a judicial proceeding[,]" *Casey v. Pallito*, 2016 WL 96157, at *12 (D. Vt. Jan. 7, 2016), and thus a defamation claim based upon court filings is not actionable in Vermont.

## B. Whether Plaintiffs' Claim for Malicious Prosecution Fails as a Matter of Law.

Plaintiffs assert a claim for malicious prosecution alleging that Defendant initiated the Civil Suit in the Vermont Superior Court without cause and with malice, and that the Civil Suit terminated in their favor. They point out that the Vermont Superior Court granted summary judgment on nine counts in their favor and thereafter they settled the Civil Suit as a "nuisance action[.]" (Doc. 43-2 at 20.)

Defendant argues that he is entitled to judgment as a matter of law in his favor because Plaintiffs cannot establish that the Civil Suit has been terminated, because Plaintiffs have not paid the $50,000 due under the settlement agreement, and because a settlement agreement is not a favorable termination. Defendant further contends Plaintiffs have not proffered sufficient evidence to satisfy their burden to establish he filed the Civil Suit with malice.

"To recover for malicious prosecution the claimant must establish that the person against whom the claim is asserted instituted the proceeding against him (1) without probable cause, (2) with malice, and that (3) the proceeding terminated in claimant's favor." *Anello v. Vinci*, 458 A.2d 1117, 1119 (Vt. 1983). Although the Vermont Supreme Court has not squarely addressed whether and in what circumstances a settlement agreement may constitute a favorable termination, in predicting how that court would rule, the court is guided by the jurisprudence of other courts.[2]

"It is well-settled that an action terminated by settlement cannot sustain a malicious prosecution claim." *Liberty Synergistics, Inc. v. Microflo Ltd.*, 50 F. Supp. 3d 267, 287 (E.D.N.Y. 2014); *see also Jaress & Leong v. Burt*, 150 F. Supp. 2d 1058, 1063 (D. Haw. 2001) ("[It is a] well-accepted exception to the general rule that a dismissal

---

[2] Here, this court must determine whether the Vermont Supreme Court would consider the settlement agreement a favorable termination in the facts and circumstances of this case. *See Giuffre Hyundai, Ltd. v. Hyundai Motor Am.*, 756 F.3d 204, 209 (2d Cir. 2014) ("[I]t is our job to predict how the forum state's highest court would decide the issues before us[.]") (internal quotation marks omitted). "In so doing, a federal court may be aided by looking to well-reasoned decisions from other jurisdictions." *Takahashi v. Loomis Armored Car Serv.*, 625 F.2d 314, 316 (9th Cir. 1980).

9

[with prejudice] resulting from a settlement does not constitute a favorable termination for malicious prosecution purposes."); *Cox v. Williams*, 593 N.W.2d 173, 175 (Mich. 1999) ("Generally, courts have held that where termination results from a compromise or settlement or is brought about by an action of the accused as a courtesy or favor or by some act of the accused that prevents the litigation, there is no favorable termination that will serve as a basis for a cause of action for malicious prosecution[.]"); *Van v. Grand Casinos of Miss., Inc.*, 724 So.2d 889, 892 (Miss. 1998) (noting that "a dismissal reached as a result of a voluntary settlement or compromise does not constitute a termination in favor of the accused"). These decisions reflect that "[the] theory underlying the requirement of favorable termination is that it tends to indicate the innocence of the accused[.]" *Haight v. Handweiler*, 244 Cal. Rptr. 488, 489 (Cal. App. Dep't Super. Ct. 1988) (internal quotation marks omitted). The Vermont Supreme Court would likely adopt a similar approach especially where, as here, the parties' settlement agreement specifically notes that neither party is admitting liability. *See* Doc. 43-2 at 16 ("There is no admission of fault—none whatsoever[.]"); *see also Siliski v. Allstate Ins. Co.*, 811 A.2d 148, 151-52 (Vt. 2002) ("[I]f the dismissal somehow indicates that the defendant is innocent of wrongdoing, it will be considered a favorable termination. . . . [I]f the reason for dismissal is 'not inconsistent' with a defendant's wrongdoing, it will not be considered a favorable termination.").

In the absence of the settlement agreement, there is no other ground for the court to determine that the Civil Suit was terminated in Plaintiffs' favor. Although the Vermont Superior Court granted summary judgment in Plaintiffs' favor on certain of Defendant's claims, it denied summary judgment with regard to others. The Civil Suit remains pending and Plaintiffs' tender of payments under the settlement agreement is conditioned upon the Vermont Superior Court placing those payments in escrow and ruling on their renewed motion to remove Defendant as Administrator of the Estate.

Because Plaintiffs have failed to establish that the Civil Suit terminated in their favor, the court need not reach the issue of whether Defendant acted with malice in filing the Civil Suit. *See Anello*, 458 A.2d at 587 (ruling "the claim [of malicious prosecution]

does not arise until the termination of the original proceeding upon which it is based[.]"); *see also Siliski*, 811 A.2d at 151 ("[T]he termination of the prior proceeding in the malicious prosecution claimant's favor is an 'essential element' of the tort.").

For the reasons stated above, Defendant's motion for summary judgment on Plaintiffs' malicious prosecution claim is GRANTED.

### C. Whether Plaintiffs' Claim for Abuse of Process Fails as a Matter of Law.

Plaintiffs allege that Defendant's motion for an ex parte writ of attachment was an abuse of process because "there was no evidence of such debt, nor any such judgment[.]" (Doc. 43-2 at 20.) To rebut this claim, Defendant cites the probate court's approval of the ex parte writ of attachment for $250,000 and asks the court to grant summary judgment in his favor.

"[A] plaintiff alleging the tort of abuse of process must plead and prove: 1) an illegal, improper or unauthorized use of a court process; 2) an ulterior motive or an ulterior purpose; and 3) resulting damage to the plaintiff. These elements are separate and distinct." *Jacobsen v. Garzo*, 542 A.2d 265, 268 (Vt. 1988). "Remedies are available to those who are harmed by abuses of this right of access to legal process. However, those remedies are carefully limited so as not to produce an unwarranted chilling effect on the exercise of the right." *Id.* at 267. "[T]here is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions." *Id.* (citation omitted).

The Restatement (Second) of Torts defines abuse of process as when an individual "uses a legal process, whether criminal or civil, against another primarily to accomplish a purpose for which it is not designed[.]" Restatement (Second) of Torts § 682 (June 2019). Courts have interpreted this to include "improperly us[ing] subpoenas, ask[ing] for an excessive attachment, or us[ing] pleadings to coerce the surrendering of unrelated property[.]" *Weinstein v. Leonard*, 2015 VT 136, ¶ 25, 200 Vt. 615, 627, 134 A.3d 547, 555 (citing *Doctor's Assocs., Inc. v. Weible*, 92 F.3d 108, 114 (2d Cir. 1996)).

11

The ex parte writ of attachment obtained by Defendant was approved by the probate court and was supported by a finding that there was "a reasonable likelihood that [Defendant] w[ould] recover judgment, including interest and costs, in an amount equal to or greater than the amount of [the attachment]." (Doc. 29-26 at 2.) The probate court further found that Plaintiffs "[were] without credibility" and there was "an immediate danger that [Plaintiffs] w[ould] sell or convey their property . . . leaving insufficient attachable property or other assets to satisfy this judgment and protect the [E]state." *Id.* at 16. The ex parte writ of attachment was issued following the probate court's 9/1/05 Decision and Order finding Plaintiff Albert Von Weingarten had improperly "obtained control of [the Estate's] assets which had an aggregate value of between $180,000 and $250,000[.]" (Doc. 29-24 at 6, ¶ 43.)

Because the probate court approved the ex parte writ of attachment for $250,000 with knowledge of the operative facts and with specific factual findings to support it, no rational jury could find that Defendant's motion for an ex parte writ of attachment constituted an "illegal, improper or unauthorized use of the court process[.]" *Garzo*, 542 A.2d at 268. "When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994). Defendant's motion for summary judgment on Plaintiffs' abuse of process claim is GRANTED.

### D. Whether Plaintiffs' Claim for Maladministration Fails as a Matter of Law.

Plaintiffs allege that Defendant's filing of the Civil Suit and motion for the ex parte writ of attachment constituted maladministration of the Estate. Specifically, Plaintiffs assert that Defendant wasted Plaintiffs' assets and those of the Estate in contravention to Defendant's fiduciary duty to the Estate and to Plaintiff Albert Von Weingarten as one of the Estate's heirs.

The court has previously noted that the Vermont Supreme Court has not affirmatively recognized a cause of action for maladministration of an estate outside the

context of a probate proceeding. At the pleading stage, however, it allowed Plaintiffs to advance this novel theory of recovery until a factual record was provided in which to decide the claim. *See* Opinion and Order Denying Plaintiffs' Motion to Alter or Amend Order, Granting Plaintiffs' Motion to Amend Complaint and Denying Defendant's Motion to Dismiss Plaintiffs' Amended Complaint, Doc. 21 at 9 ("At this juncture, the court has insufficient information to determine whether a claim for maladministration of an estate would be recognized under Vermont law. Rather than dismiss the claim at the pleading stage, the court will await a factual record."). Because a factual record is now before the court, the court must predict whether the Vermont Supreme Court would recognize a tort claim for maladministration of the estate in the facts and circumstances of this case. *See Chauca v. Abraham*, 841 F.3d 86, 93 (2d Cir. 2016) ("[W]here the substantive law of the forum state is uncertain or ambiguous, the job of the federal courts is carefully to predict how the highest court of the forum state would resolve the uncertainty or ambiguity.") (quoting *Travelers Ins. Co. v. 633 Third Assocs.*, 14 F.3d 114, 119 (2d Cir. 1994)).

There are at least three reasons why the Vermont Supreme Court would not recognize a cause of action for maladministration of an estate outside the context of a probate court proceeding. First, under Vermont law, "claim[s] [with the exception of malicious prosecution and abuse of process] cannot be predicated upon . . . allegedly improper filing[s.]" *Garzo*, 542 A.2d at 268. The Vermont Supreme Court has observed that "[i]f the well-reasoned balance . . . struck between free access [to the courts] and remedy for serious abuse is really to mean anything then we must not permit . . . circumvention by affording an . . . unrestricted action under a different label." *Id.* (second and third alteration in original) (internal quotation marks omitted). Against this backdrop, Plaintiffs face an uphill battle in asking the court to predict that the Vermont Supreme Court would recognize a new tort for maladministration of an estate.

Second, where Vermont law is undeveloped, the Vermont Supreme Court frequently looks to the Restatement (Second) of Torts for guidance. *See Birchwood Land Co. v. Krizan*, 2015 VT 37, ¶ 9, 198 Vt. 420, 425, 115 A.3d 1009, 1012 ("We frequently

have adopted provisions of this Restatement where our law is undeveloped."). The Restatement (Second) of Torts does not recognize a cause of action for maladministration of an estate. Although both Vermont law and the Restatement recognize a cause of action for breach of a fiduciary duty, in this case, the only fiduciary duty relied upon arises from Defendant's role as Administrator of the Estate.

Third, Vermont law delegates to Vermont's probate courts and Vermont's Superior Courts the authority to hear claims pertaining to a probate estate's administration. *See* 14 V.S.A. § 917 ("The Probate Division of the Superior Court shall regulate the conduct of persons appearing in proceedings or involved in the administration of estates or other matters within the court's jurisdiction. . . . It may exercise the powers of contempt . . . and remove or suspend a fiduciary."); 4 V.S.A. § 35(2)-(3) ("The Probate Division shall have jurisdiction of: the settlement of estates[.]"); *see also In re Estate of Doran*, 2010 VT 13, ¶ 15, 187 Vt. 349, 356, 993 A.2d 436, 441 (describing the scope of a de novo review of a probate court's decision under Vt. R. Civ. P. 72 and noting "'the record on appeal shall consist of the papers and exhibits filed in probate court' as well as the appellant's statement of questions and any transcripts furnished by the parties") (quoting Vt. R. Civ. 72(c)); *In re McGowan's Estate*, 102 A.2d 856, 857 (Vt. 1954) ("For the due and orderly settlement of the estate of a deceased person, under the direction and supervision of the probate court, [14 V.S.A. § 917] contemplates that . . . if it happens that an executor or administrator is unsuitable for that purpose, he may be removed."). Having crafted a detailed procedure for adjudicating concerns regarding a probate estate's administration that permits not only fiduciary removal but de novo review, it is unlikely that the Vermont Supreme Court would recognize a free-floating claim for maladministration of an estate untethered to a probate court proceeding. Indeed, the Vermont Superior Court reached that same conclusion in the Civil Suit.[3]

---

[3] The Vermont Superior Court in the Civil Suit ruled that "all claims against executors de son tort are properly made in the probate division and not in this court." (Doc. 29-33 at 16.)

14

Because the court predicts the Vermont Supreme Court would not recognize a claim for maladministration of the estate outside the context of a probate court proceeding, Defendant's motion for summary judgment on that claim is GRANTED.

## CONCLUSION

For the reasons stated above, the court DENIES AS MOOT Defendant's motion to dismiss and motion to strike the Amended Complaint (Docs. 26 & 28), CONDITIONALLY GRANTS Plaintiffs' motion to amend (Doc. 31), DENIES AS MOOT Plaintiffs' motion to strike the statement of undisputed facts (Doc. 36), and GRANTS Defendant's motion for summary judgment on all claims set forth in the Second Amended Complaint. (Doc. 37.)

SO ORDERED.

Dated at Burlington, in the District of Vermont, this 28th day of August, 2019.

_____
Christina Reiss, District Judge
United States District Court